**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000549
09-SEP-2013
09:49 AM**

NO. CAAP-12-0000549

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
NOAH PERKINS, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 11-1-1151)

MEMORANDUM OPINION
(By: Nakamura, C.J., Leonard and Reifurth, JJ.)

Defendant-Appellant Noah Perkins ("Perkins") appeals from the "Order of Resentencing; Revocation of Probation," filed on May 7, 2012[1] in the Circuit Court of the First Circuit ("Circuit Court").[2]

I. BACKGROUND

On February 14, 2012, pursuant to an earlier guilty plea, Perkins was sentenced for two counts of Burglary in the First Degree, in violation of Hawaii Revised Statutes ("HRS") § 708-810(1)(c); one count of Unauthorized Entry in a Dwelling in the First Degree, in violation of HRS § 708-812.55; and one count of Terroristic Threatening in the First Degree, in violation of HRS § 707-716(1)(f)(i).[3]  The Circuit Court sentenced Perkins in

---

[1]      Perkins's notice of appeal purports to appeal "from the Judgment of Conviction and Sentence filed on May 7, 2012[,]" however, attaches to it the Order of Resentencing; Revocation of Probation entered on May 7, 2012. Since the substance of Perkins's arguments on appeal challenge the latter document, we proceed as if this was the document from which Perkins has appealed.

[2]      The Honorable Randal K.O. Lee ("Judge Lee") presided.

[3]      As part of the plea bargain, the Circuit Court granted the State's motion to *nolle prosequi* one count of Violation of an Order of Protection, *see* HRS § 586-11, and two additional counts of Burglary in the First Degree.

accordance with the plea agreement. Thereby, he was sentenced to five-year concurrent terms of probation for each count, along with agreed-upon special conditions. Also in accordance with the plea agreement, the Circuit Court ordered that Perkins be referred to Hawaii's Opportunity Probation with Enforcement ("HOPE") program. The special conditions included an eight-month concurrent term of imprisonment, with credit for time served, and specified that Perkins "[w]rite letters of apology to Mr. Frank Perkins, Mr. Jonah Perkins, Ms. Messaouda Dawley, and Mr. Dylan Dawley by July 1, 2012."[4]

On April 11, 2012, almost two months before the deadline by which the apology letters needed to be written, the State, through Probation Officer James M. May ("Officer May"), moved to revoke Perkins's probation. The motion for revocation was based solely on the ground that Perkins had violated the condition of his probation requiring him to write a letter of apology to Messaouda Dawley. The State alleged that Perkins "failed to submit a letter of apology to Messaouda Dawley, despite being ordered to do so by the Court."

Officer May's motion was prompted by two handwritten letters that he received from Perkins on April 10, 2012. One was a cover letter addressed to Officer May and the other was a letter addressed to Ms. Dawley ("Dawley Letter"). The cover letter read as follows:

> Dear James May,
>
> I'm writing this letter for you just to give you a letter so you can give it to the people who sent me hear [sic]. Even though it is a bad letter, it is the truth. Well I will check in with on [sic] April 13, and I will do what I need to do to get off probation, because I want to go back to my country.[5] I will give you all my info when I get it from my dad. Thank you for the good news, and see you on the 13th.
>
> - Noah Perkins [signature]

---

[4] Arrest warrant affidavits indicate that Perkins had been living temporarily at Ms. Dawley's house and, while she was away, he took her television and a gaming console. He also visited his father's house, where his father and brother resided, threatened each of them, and removed a gaming console. Perkins's father had a restraining order against Perkins at the time.

[5] Prior to his plea hearing, Perkins had advised the court by letter that he desired to serve his time and return to Russia.

2

The Dawley Letter read as follows:

> Dear Messaouda Dawley,
>
> Let me start this letter by saying that I'm not sorry for what I did to your family. . . . But I have write [sic] this letter to you because I was told by the judge, and when you called Kats [sic] phone and threatened me saying that you have friends with the FBI, and you have friends or investigators. Let me tell you that I knew that your fool [sic] of shit, and that I'm not feeling sorry for you at all. I hate the USA, and the Feds, but I have to play by the rules for now, and when I get off probation, I will make the American people pay, mark my words, you can take this letter and shove it up your ass, thank for giving your TV, and your son [sic] PS3, and ill [sic] see you around.
>
> Fuck you,
> Andrey Borsovich Ledniev [signature]

On May 7, 2012, the Circuit Court held a probation revocation hearing on Officer May's motion and affidavit alleging that Perkins "failed to submit a letter of apology to [Ms. Dawley] despite being ordered to do so and, instead, had submitted a letter which is attached [as an exhibit]." Perkins denied the allegation.

The State called Officer May to testify. Officer May explained that upon receiving the Dawley Letter, he moved to revoke probation because he "perceived the letter as threatening[.]" He testified that a couple of days later he received a phone call from Perkins, who was inquiring as to why he was not being released from custody as expected. Officer May explained to Perkins that it was because he had moved to revoke probation. Officer May related that Perkins' response was that "what he had said [in his letter] was true and that he was trying to make a statement." Officer May testified that he thereafter received another pair of letters from Perkins. Officer May described one of the letters as "addressed to Ms. Dawley which was apologetic in nature in which he was apologizing . . . and taking responsibility . . . ."[6] On cross-examination, Officer May affirmed that it was not yet July 2012, and that Perkins had since sent an apologetic letter, in addition to the one that he

---

[6] The other letter was addressed to Judge Lee, in which Perkins "relized [sic] that [he] made a big mistake on the apology letter . . . to the Dawaleys [sic]," expressed regret for having sent the Dawley Letter, and explained that he sent it out of anger, that he realized he had to make better choices, and that he hoped he had not thrown away his freedom.

deemed threatening in nature.

Perkins testified on his own behalf. He explained that he had written the letter out of anger stemming from how he was treated by "ACOs" while he was incarcerated. He also explained the contents of the letter, and stated that he had no plans to harm anyone. He acknowledged that the letter was threatening and unacceptable, explained that he did not send the letter directly to Ms. Dawley because she had a restraining order against him, and stated that he did not think the probation officer would forward it to Ms. Dawley. Regarding the second, apologetic letter he sent to Ms. Dawley, he affirmed that it was "from the heart," and explained that "[he] wanted to pay them back, for reimbursement, and just to leave them alone."

On cross-examination, Perkins responded that it was "not really" his intent that Ms. Dawley receive the first letter. On re-cross, Perkins testified that it was his desire to finish probation and return to Russia to find his birth mother. He also testified that the conditions and treatment while incarcerated reminded him of his time in an orphanage in Russia, and that the association was one of the reasons he became angry. Judge Lee asked of Perkins if he had consulted with a lawyer prior to writing the second letter; Perkins responded that he had not.

The State argued that the Dawley Letter was plainly unapologetic, Perkins knew he had to write an apology letter, his second letter was only written after he learned that Officer May had moved to revoke his probation, and there "need[s] to be consequences and that the State has proven there was a violation." In her counter-argument, Perkins's counsel explained that the terms and conditions of probation afforded Perkins until July 12, 2012, to write his apology letters, that he was therefore not out of compliance, and that "it's unusual for a defendant to even start meeting [probation] conditions until he's gotten out and talked to [his probation officer.]" She further argued that:

> [the Dawley Letter] in and of itself is not a violation. It may be cause for concern. It may be a reason that we should be extra careful in observing whether he meets his conditions, and we should be concerned probably about his mental health in terms of his ability to feel that frustration that he felt [while incarcerated], but it's not

a probation violation.

After argument, the court addressed the parties. Judge Lee recognized that Perkins had at one point sought to undo his plea agreement in order to do his time and return to Russia, correlating this with a portion of the May Letter. He stated "[i]t's quite obvious that Mr. Perkins had sent this letter to [Officer] May indicating that he wanted [Officer] May to give this letter to Ms. Dawley because she had put him in jail."

Judge Lee continued:

> What the court finds troubling is that you cannot undo a letter. The letter was sent for the purposes of the defendant complying with the terms and conditions of his agreement with the State, and the court had followed the agreement. In other words, he got the deal that he wanted. The deal he wanted was probation provided he does these terms. So he got the deal. The court sentenced him accordingly.
>
> So the issue now is did he violate the terms and conditions of probation by sending this letter? The defendant says that he was angry and irritated by his situation in prison. The court further finds that Mr. Perkins was further irritated because he was held in prison beyond what he believed he was going to be released, and that's why he called Mr. May, to find out why he wasn't being released. And that's why Mr. May had indicated that he wasn't being released, because of the letter that he -- the first letter that he sent, that he had some concerns, and he filed a motion to revoke probation because that wasn't the type -- that wasn't an apology letter.
>
> . . . .
>
> The second letter that you wrote was an apology, I agree. But you only wrote it so that you could get out of prison because you knew Mr. May had concerns about your first letter which you, in your own words, expressed this is the way you truly feel which means you have no remorse.
>
> . . . .
>
> Therefore, the court finds that Mr. Perkins did violate the terms and conditions of probation and, therefore, grants the motion to revoke probation.

The court proceeded immediately to resentencing. After hearing Perkins' father speak, argument from Perkins' counsel and the State, and hearing brief comments from Perkins himself, Judge Lee resentenced Perkins to concurrent terms of imprisonment on each count of conviction. The Order of Resentencing; Revocation of Probation was issued accordingly, and this timely appeal followed.

On appeal, Perkins alleges that the Circuit Court abused its discretion in (1) "granting the State's motion for revocation of probation and revoking Mr. Perkins's probation[,]" and (2) "resentencing Mr. Perkins to indeterminate terms of imprisonment."

II.  STANDARDS OF REVIEW

Revocation of Probation

Probation revocation decisions are reviewed for abuse of discretion:

> Whether probation should be granted, revoked, or modified lies solely within the discretion of the sentencing court. . . .  While the power of the court to revoke or to modify the conditions of probation is well established, the exercise of this authority must rest upon the sound and enlightened judgement of the trial court. And where the record reflects justifiable cause for the revocation or the modification of probation terms, the trial court's determination will be sustained.

*State v. Yamamoto*, 79 Hawai'i 511, 514, 904 P.2d 525, 528 (1995) (citing *State v. Huggett*, 55 Haw. 632, 635-36, 525 P.2d 1119, 1122 (1974)).

A court's discretion is further guided by HRS § 706-625(3), which specifies that "[t]he court shall revoke probation if the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of the order[.]" *State v. Lazar*, 82 Hawai'i 441, 443, 922 P.2d, 1054, 1056 (1996) (quoting HAW. REV. STAT. § 706-625(3) (Supp. 1994)).

III. DISCUSSION

Perkins advances two grounds for concluding that the Circuit Court abused its discretion in revoking his probation. First, he argues that he was in compliance with the conditions of probation, having sent his second, apologetic letter to Officer May for forwarding to Ms. Dawley prior to July 12, 2012.  Second, he argues that the Circuit Court failed to consider that it had sentenced Perkins to the HOPE version, rather than the "regular" version, of probation.  In doing so, he presents a description from HOPE's website, which describes itself as typically punishing violators swiftly, but moderately, with "short jail term[s]."

HRS § 706-625 provides:

> **Revocation, modification of probation conditions.**
> (1) The court, on application of a probation officer, the prosecuting attorney, the defendant, or on its own motion, after a hearing, may revoke probation except as provided in subsection (7), reduce or enlarge the conditions of a sentence of probation, pursuant to the provisions applicable to the initial setting of the conditions and the provisions of section 706-627.
>
> (2) The prosecuting attorney, the defendant's probation officer, and the defendant shall be notified by the movant in writing of the time, place, and date of any such hearing, and of the grounds upon which action under this section is proposed. The prosecuting attorney, the defendant's probation officer, and the defendant may appear in the hearing to oppose or support the application, and may submit evidence for the court's consideration. The defendant shall have the right to be represented by counsel. For purposes of this section the court shall not be bound by the Hawaii rules of evidence, except for the rules pertaining to privileges.
>
> (3) *The court shall revoke probation if the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of the order* or has been convicted of a felony. The court may revoke the suspension of sentence or probation if the defendant has been convicted of another crime other than a felony.

HAW. REV. STAT. § 706-625 (Supp. 2012) (emphasis added).

An inexcusable failure to comply with a substantial requirement imposed as a condition of a probation order requires revocation of probation. *Lazar*, 82 Hawaiʻi at 443, 922 P.2d at 1056 (concluding that defendant's failure to comply with a requirement that he remain in a rehabilitation program until clinically discharged was inexcusable). Nevertheless, although many things may be said about Perkins's submission of the Dawley Letter - it was foolish, vulgar, abrasive, unnerving (if not frightening), contemptuous, and contemptible - it did not establish the asserted violation of his probation. *Cf. State v. Reyes*, 93 Hawaiʻi 321, 2 P.3d 725 (App. 2000) (holding that, where a condition of probation was that defendant submit to polygraph examinations, defendant's continued refusal to admit having committed offenses and his failure to pass those tests did not constitute an inexcusable failure to comply with a condition of probation).

Perkins was accused of not complying with a specific condition of probation -- his obligation to "[w]rite [a] letter[] of apology to . . . Ms. Messaouda Dawley . . . by July 1, 2012."

7

*See* HAW. REV. STAT. § 706-625(2) (requiring the defendant to be notified of the grounds upon which the motion for revocation is based). Perkins, however, did submit a second letter to Ms. Dawley, via Officer May, that both Officer May and Judge Lee found to be apologetic in nature and apparently satisfactory (but for Perkins's earlier letter). Furthermore, the second letter was timely; he submitted it with more than two months to spare. By the plain terms of that probationary condition, with respect to Ms. Dawley, Perkins complied. Therefore, we conclude that Perkins did not fail to comply with the condition of his probation on which the State's motion for revocation was based.[2/] Consequently, we vacate the Circuit Court's revocation of probation.

In light of our ruling on the probation revocation issue, we decline to rule on Perkins's contention that the Circuit Court abused its discretion in resentencing him to an indeterminate term of ten years imprisonment.

IV. CONCLUSION

We vacate the Circuit Court's May 7, 2012 Order of Resentencing; Revocation of Probation, and remand for proceedings consistent with this memorandum opinion.

DATED: Honolulu, Hawai'i, September 9, 2013.

On the briefs:

James S. Tabe,
Deputy Public Defender,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

---

[2/]  Although the State may have perceived the Dawley Letter as threatening, it did not seek revocation on the ground that Perkins had engaged in criminal conduct in submitting the letter.